1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

10

AT TACOMA

11

12
13
14
15
16
17
18

| | |
|---|---|
| JOJO DEOGRACIAS EJONGA,<br><br>               Plaintiff,<br><br>   v.<br><br>ALEX WATANABE,<br><br>               Defendant. | CASE NO. 2:21-cv-01004-DGE<br><br>ORDER ON MOTIONS IN LIMINE<br><br>(DKT. NOS. 170, 172) |

19

## I      INTRODUCTION

20

Before the Court are Defendant's Motions in Limine (Dkt. No. 170) and Plaintiff's

21

Motions in Limine (Dkt. No. 172.)  The Court delivered oral rulings on the motions at the

22

November 22, 2024 pretrial conference, and issues this written order to memorialize those

23

rulings.  The Court assumes familiarity with the facts of the case.

24

ORDER ON MOTIONS IN LIMINE (DKT. NOS. 170, 172) - 1

1

## II    UNOPPOSED MOTIONS

**No. 1: Exclude Evidence or Argument Suggesting that the State Will Pay Damages Including Punitive Damages Attributed to the Named Individual Defendant**

The parties agree that any reference to indemnification should be prohibited.  Plaintiff agrees with the understanding that Defendant will not be able to argue that she cannot afford to pay punitive damages.  (Dkt. No. 190 at 3.)  The motion is **GRANTED**.

**No. 2: Exclude Evidence or Argument Suggesting That Mr. Ejonga's Attorneys Have Been Appointed by the Court**

The motion is **GRANTED.**

**No. 3: Exclude Evidence, Argument, or Testimony Regarding an Abstract Per Diem Calculation or Any Other Formula to Calculate Pain and Suffering Damages**

The parties agree that if this Court allows argument as to mental and emotional damages, it should prohibit use of a standard formula to calculate those damages.  Plaintiff reserves the right to reference the amount of time the injury persisted as a reference for calculating damages.  (Dkt. No. 190 at 3.)  With that understanding, the motion is **GRANTED**.

**No. 4: Exclude Testimony, Evidence or Argument about the Parties' Prior Settlement Negotiations and Settlement Offers.**

The motion is **GRANTED**.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

### III    DEFENDANT'S CONTESTED MOTIONS

**No. 2:[1] This Court Should Exclude Evidence, Testimony, or Argument regarding Mr. Ejonga's Conditions of Confinement or Alleged Mistreatment by the Department of Corrections or Its Employees Prior to February 18, 2021**

The motion is **DENIED IN PART**.  The Court agrees with Defendant that there should not be a mini-trial on dismissed claims, however, Defendant's formulation barring *all* testimony about conditions prior to February 18, 2021, is overbroad.  The electronic message Plaintiff sent that resulted in Defendant Watanabe issuing an infraction read: "It is crazy while yall got me sick, torture me in IMU, I grieve yall, then yall want to write me up. This is intimidation and harassment. Let Watanabe know, I will see her in Court." (Dkt. No. 172 at 3.)  The parties are generally in agreement that some context is necessary to understand this message, especially that: a) Plaintiff complained about conditions in the prison related to COVID-19, b) Plaintiff was in COVID-19 isolation, c) Plaintiff had exceeded the number of grievances he was allowed to file.  That context is permissible, however, Plaintiff is not permitted to argue that particular conditions of confinement related to COVID-19 violated his constitutional rights.

As discussed during the November 22, 2024 pretrial conference, the parties will jointly submit a proposed limiting instruction explaining that information about conditions of confinement related to COVID-19 is being introduced for context to help understand the First Amendment claim, and the jury is not considering the constitutionality of those conditions.

---

[1] The Court maintains the numbering of motions as listed in Defendant's brief.

ORDER ON MOTIONS IN LIMINE (DKT. NOS. 170, 172) - 3

**No. 4: This Court Should Exclude Evidence or Reference to "Sending a Message" to the State or to Department of Corrections, or Olympia or Other Similar Statements**

The motion is **DENIED**.  As discussed *infra*, the Court will allow argument on punitive damages.  The Ninth Circuit has held that a "sending a message" argument may be permissible within the context of punitive damages.  *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 519 (9th Cir. 2004); *see also Coachman v. Seattle Auto Mgmt. Inc.*, No. 17-187RSM, 2018 WL 4510067, at *5 (W.D. Wash. Sept. 20, 2018).

**No. 6: This Court Should Exclude Evidence or Reference to an Abstract Value for a Constitutional Violation, Including Statements About the Importance of Constitutional Rights in Our Society**

The motion is **DENIED**.  Defendant's argument rests on *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 302 (1986), a case about an erroneous jury instruction, which stated "[i]n one sense, no monetary value we place upon Constitutional rights can measure their importance in our society or compensate a citizen adequately for their deprivation."  *See id.* at 307–08.  Defendant's concerns can be addressed when the Court rules on jury instructions and need not be addressed in a motion in limine; the Court can address any specific objections to testimony on the value of constitutional rights as they come up during trial.  Further, the fact that Plaintiff filed a pro se complaint that confused nominal and compensatory damages does not equate this case with the "abstract value" problem identified in *Stachura*.

**No. 7: This Court Should Exclude Evidence or Reference to any Formula to Calculate Punitive Damages Based Upon a Multiple of Punitive Damages to Compensatory Damages Awarded**

The motion is **RESERVED**.  Defendant's case in support of this motion, *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639–40 (E.D. Wash. 2011), does not discuss a formula by which damages are calculated.  However, the Court is concerned that suggesting to the jury a formulaic or *per se* approach to calculating punitive damages could run afoul of due process limits.  *Cf. State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 424–25 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582–83 (1996).  At this time, the motion is speculative since it is not clear to the Court that Plaintiff actually intends to offer a formula of some sort.  The Court will reserve ruling unless and until such a scenario arises.

**No. 8: The Court Should Exclude Testimony, Evidence, Argument or Comment from a Lay Witness as To Medical Diagnoses or Causation of Medical Conditions**

The motion is **DENIED**.  First, the motion is insufficiently supported.  The case Defendant cites in support of its motion, *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014), concerns an ALJ hearing on social security benefits, where the evidentiary standards are not the same.

Second, there is a body of caselaw holding that a plaintiff's treatment provider can testify as a fact witness as to her own observations of the plaintiff's condition.  *Smart v. Fremont Mar. Servs., Inc.*, No. C01-1241R, 2002 WL 34380761, at *1 (W.D. Wash. Oct. 1, 2002) ("treating physicians are not considered retained experts so long as they testify solely on the care and treatment of the patient."); *Mansoor v. M/V ZAANDAM*, No. C05-1027 P, 2006 WL 2222332, at *2 (W.D. Wash. Aug. 2, 2006) ("Plaintiff has only disclosed his treating physicians as fact witnesses. As fact witnesses, Plaintiff's treating physicians may testify regarding what they actually observed and what treatment they provided."); *Smith v. Fricke*, 635 F.Supp.3d 152, 162 (N.D.N.Y. 2022) (In prisoner civil rights case, "[a] treating physician may 'offer opinion

testimony on diagnosis, treatment, prognosis, and causation, but *solely* as to the information he[ ] has acquired through observation of the [p]laintiff in his[ ] role as a treating physician.'");

*Grimm v. Gloucester Cty School Bd*., 400 F.Supp.3d 444, 453–54 (E.D. Va. 2019) (transgender student alleging discrimination could admit medical records from their own treating physicians establishing their gender dysphoria diagnosis and treatment without qualifying those doctors as experts).

The Court does not at this time reach Plaintiff's argument that to the extent Jennifer Ross PA-C should have been disclosed as an expert under Federal Rule of Civil Procedure 26(a)(2)(A) the error is harmless under Rule 37(c). (Dkt. No. 190 at 8–9.) Ms. Ross will testify as a fact witness and her testimony is limited to her own observations.

Plaintiff may testify as to "his own symptoms, treatment, and experiences, and the impact of those things on his daily life during the period in question" (*id.* at 8) but cannot offer self-diagnosis.

*Note: Defendant's motions on damages are discussed infra, Section V.*

## IV     PLAINTIFF'S CONTESTED MOTIONS

**No. 1: Motion to Exclude Evidence and Argument Regarding Mr. Ejonga's Criminal Convictions and the Conduct Underlying Those Convictions**

The Motion is **GRANTED**. The dispute here is narrow; the parties agree to not disclose to the jury that Plaintiff is convicted of attempted murder but disagree about use of the word "felon." The Court agrees with Plaintiff that describing Mr. Ejonga as a "convicted person" or

1  "incarcerated person" is sufficient to give the jury the necessary context to understand the events

2  in question, without using the potentially pejorative term "felon."[2]

3  **No. 2: Motion to Exclude Evidence and Argument Regarding Any Prior or Separate**

4  **Lawsuits or Claims Filed by Mr. Ejonga**

5       The parties generally agree not to mention prior lawsuits by Mr. Ejonga or his

6  litigiousness, but Defendant wants to be able to introduce evidence that Mr. Ejonga's claims

7  about COVID-19 conditions of confinement were dismissed if he brings up those conditions in

8  his testimony.  The Court generally agrees with Plaintiff that evidence about unrelated lawsuits

9  or dismissed claims is irrelevant, potentially prejudicial, and may not be part of Defendant's case

10  in chief, but agrees with Defendant that such evidence may become a valid grounds for

11  impeachment if Mr. Ejonga opens the door to that line of inquiry in his testimony.

12       Subject to those conditions, the Court **GRANTS** the motion.  This order does not

13  preclude reference to Mr. Ejonga's threat of litigation that is the subject of this dispute (e.g., "I

14  will see her in court.").

15  **No. 3: Motion to Exclude Evidence and Argument of Prior Purported Misconduct by Mr.**

16  **Ejonga During Incarceration**

17       Again the dispute is narrow; the parties generally agree not to include evidence related to

18  prior misconduct in prison by Mr. Ejonga, but Defendant wishes to introduce evidence that there

19  was a five grievance maximum at the prison and Mr. Ejonga exceeded that limit.  The Court

20  agrees with Defendant that the five-grievance limit is necessary information to understand the

21  message at issue in this case, but Defendant's proposed formulation, allowing any "prior

22

23  ――――――――――――――
[2] The Parties also have been asked to prepare a jury instruction informing the jury that Mr.
Ejonga remains in custody and that corrections officers from the Department of Corrections will

24  be present and near Mr. Ejonga while he is in the courtroom.

purported misconduct" in February and March of 2021 (*see* Dkt. No. 188 at 4), is vague and overbroad.

The Court therefore **GRANTS** the motion, subject to the caveat that Defendant may introduce evidence that a) there was a rule against inmates filing more than five grievances, b) Plaintiff received warning(s) about exceeding the limit, and there was a violation against him related to the grievance limit which immediately preceded the message and disciplinary charge at is issue.

**No. 4: Motion to Exclude Any Evidence and Argument that Mr. Ejonga Abuses or Overuses the Grievance or Kite Process to Complain About Conditions of Confinement**

Subject to the parties' agreement on a "cutoff date" of December 1, 2020 for prior grievances, the motion is **GRANTED**.

## V    MOTIONS ON DAMAGES

**Defendant's Motion No. 9: The Court Should Exclude Testimony, Evidence, and Argument that Mr. Ejonga is Entitled to Damages for Mental or Emotional Injuries**

Defendant's Argument:

Defendant argues that Plaintiff is barred from seeking damages for mental or emotional injuries by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), which reads:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

Defendant further argues that Plaintiff's pro se complaint failed to put her on notice that he was seeking compensatory damages because he only sought "nominal" damages of $66,300, and the record is devoid of evidence that he actually suffered mental or emotional damages.  (Dkt. No. 170 at 7–8.)

1    Plaintiff's Response:

2        First, Plaintiff argues that Defendant's motion is a summary judgment motion not

3    properly raised as a motion in limine, and the Court should therefore not consider it.  *Louzon v.*

4    *Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013) ("Where, as here, the motion in limine is no

5    more than a rephrased summary-judgment motion, the motion should not be considered."); *Nomo*

6    *Agroindustrial SA DECV v. Enza Zaden N. Am. Inc.*, No. CV-05-351-TUC-FRZ, 2007 WL

7    1077023, at *1 n.1 (D. Ariz. Apr. 9, 2007) ("[M]otions in limine are meant to deal with discrete

8    evidentiary issues related to trial, and are not another excuse to file dispositive motions disguised

9    as motions in limine."); *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F.

10   Supp.2d 861,870 (E.D. Mich. 2007) ("To the extent that the defendants are arguing that the facts

11   are insufficient to allow the plaintiff to seek punitive damages from the jury, that argument must

12   be rejected because it should have been raised in a motion for summary judgment.").  (Dkt. No.

13   190 at 10–11.)

14       Second, Defendant had ample notice of the damages Plaintiff was seeking, both from the

15   pro se complaint, which should be liberally construed, and a letter Plaintiff's counsel sent in

16   January 2024 after being appointed by the Court.  (*Id.* at 11–12.)

17       Third, even if 42 U.S.C. § 1997e(e) applies here, Plaintiff would clear the bar for

18   showing physical injury, since the Ninth Circuit requires only de minimis injury, *Oliver v.*

19   *Keller*, 289 F.3d 623, 628 (9th Cir. 2002), and Plaintiff suffered sleep loss and exacerbated

20   anxiety and migraines as a result of the First Amendment violation.  (*Id.* at 12.)

21       Finally, Defendant's argument is legally erroneous, because binding precedent in the

22   Ninth Circuit holds that § 1997e(e) does not apply to First Amendment claims.  *Canell v.*

23   *Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998).  Other courts are in accord with *Canell*.  *See*

24

1  *Rowe v. Shake*, 196 F.3d 778, 781–82 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for

2  a violation of his First Amendment rights aside from any physical, mental, or emotional injury he

3  may have sustained" because "[a] deprivation of First Amendment rights standing alone is a

4  cognizable injury"); *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015), *cert. denied*, 577 U.S.

5  1062 (2016) ("The statute provides that a prisoner may not bring a civil action for mental or

6  emotional injury" and "says nothing about claims brought to redress constitutional injuries,

7  which are distinct from mental and emotional injuries"); *Shaheed-Muhammad v. Dipaolo*, 393 F.

8  Supp. 2d 80, 107 (D. Mass. 2005) (citing *Canell* and holding that "where the harm that is

9  constitutionally actionable is the violation of intangible rights—regardless of actual physical or

10  emotional injury—§ 1997e(e) does not govern."); *Siggers-El v. Barlow*, 433 F. Supp. 2d 811,

11  816 (E.D. Mich. 2006) ("Application of § 1997e(e) to bar mental or emotional damages would

12  effectively immunize officials from liability for severe constitutional violations, so long as no

13  physical injury is established…. [S]ince First Amendment violations rarely, if ever, result in

14  physical injuries, construction of the PLRA against recovery of damages would defeat

15  congressional intent and render constitutional protections meaningless."). (Dkt. No. 190 at 12–

16  15.)

17     Analysis:

18        As an initial matter, and as the Court indicated in the last status conference (*see* Dkt. No.

19  169), Defendant's motion should have been raised as a motion for summary judgement and is not

20  properly raised as a motion in limine.  Dispositive motions were due on February 2, 2023 (*see*

21  Dkt. No. 120), nearly two years ago, and there was no substantive movement in this case in the

22  year-long interval between appointment of Plaintiff's counsel and now.  (*See* Dkt. No. 162.)

23

24

Nonetheless, the Court can readily rule on the motion, because it is foreclosed by *Canell*.[3]

*Canell* was a First Amendment religious freedom claim brought by a pretrial detainee.

Defendant argued that 42 U.S.C. § 1997e(e) barred the detainee's action because he claimed

mental/emotional injury without physical injury.  The Ninth Circuit rejected that argument and

held:

> Canell is not asserting a claim for 'mental or emotional injury.' He is asserting a claim
> for a violation of his First Amendment rights. The deprivation of First Amendment rights
> entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or
> any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not
> apply to First Amendment Claims regardless of the form of relief sought.

143 F.3d at 1213.  Moreover, the Court agrees with Plaintiff that application of § 1997e(e) to

First Amendment claims would "render constitutional protections meaningless."  *Siggers-El*, 433

F. Supp. 2d at 816.  Finally, the Court agrees with Plaintiff that Defendant had ample notice of

the damages Plaintiff was seeking, both from the *pro se* complaint and Plaintiff counsel's letter

of January 2024.  (*See* Dkt. No. 191-2.)

 For all those reasons, the motion is **DENIED**.

**Defendant's Motion No. 10: The Court Should Exclude Testimony, Evidence, and
Argument that Mr. Ejonga is Entitled to Damages for Mental or Emotional Injuries**

 Defendant's Arguments:

 Defendant argues that Plaintiff is barred from seeking punitive damages by 18 U.S.C.

§ 3626(a)(1)(A) which reads:

---

[3] *Canell*'s holding as to the underlying First Amendment claim has been abrogated, because it
relied on a First Amendment test that the Ninth Circuit later held was abrogated by *Employment
Division v. Smith*, 494 U.S. 872 (1990).  *See Nealy v. Shinn*, 2024 WL 3842094 at *2 (9th Cir.
Aug. 16, 2024) (recognizing abrogation).  However, it appears *Canell* is still binding as to
application of 42 U.S.C. § 1997e(e).

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

The term "civil action with respect to prison conditions" means "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2). Defendant states this case is a qualifying civil action, since it concerns "the effects of actions by government officials on the lives of persons confined in prison"—namely the effect of Watanabe's allegedly-retaliatory disciplinary charge. (*See* Dkt. No. 170 at 10.)

Critically, the statute defines "prospective relief" to mean "all relief other than compensatory money damages." 18 U.S.C. § 3626(g)(7). Defendant argues that because punitive damages are not compensatory, they are "prospective relief" under the statute. (Dkt. No. 170 at 10.) The Eleventh Circuit agreed with this interpretation in *Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015). *Johnson* succinctly held that "[p]unitive damages are relief other than compensatory monetary damages. Therefore, punitive damages are prospective relief." *Id.* Defendant also cites several cases distinguishing punitive and compensatory damages, and the legislative history of the PLRA: Congress considered a draft that would have defined "prospective relief" as "all relief other than monetary damages" but instead added the word *compensatory* to the definition, broadening its reach. (Dkt. No. 170 at 10–12.)

1      Next, Defendant argues that punitive damages can never meet the requirements of 18

2   U.S.C. § 3626(a)(1)(A), because they are never "necessary to correct the violation of a Federal

3   right." (Dkt. No. 170 at 12–13.) That is because punitive damages go beyond what is necessary

4   for deterrence purposes, and they are not intended to make the Plaintiff whole. Defendant cites a

5   case about municipal liability, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981),

6   which states that punitive damages "are assessed over and above the amount *necessary* to

7   compensate the injured party." (emphasis added). Punitive damages also do not "correct" a

8   violation because they are forward looking. (Dkt. No. 170 at 13–14.) Punitive damages are

9   never the "least intrusive" means and necessarily extend beyond the "particular plaintiff or

10  plaintiffs." (*Id.* at 14.)

11      <u>Plaintiff's Response</u>:

12      First, Plaintiff reiterates that Defendant's motion is not properly raised as a motion in

13  limine and thus should not be considered here. *See Louzon*, 718 F.3d at 563; (Dkt. No. 190 at

14  15–16.)

15      Second, Defendant's position is partly contradicted by one of its primary cases, *Johnson*.

16  In that case, the Eleventh Circuit stated:

17
18
19
20
21
22
> Because Congress has provided that punitive damages are prospective relief, we must give the requirements of § 3626(a)(1)(A) some meaning in the context of punitive damages. We think those requirements mean that a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case. They also mean that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so. Many factors may enter into that determination. For example, the number of excessive force violations an individual defendant or institution has had might affect whether punitive damages were necessary, and if so, the amount required to deter future violations.

23
24

1    *Johnson*, 280 F.3d at 1325.[4]

2        Plaintiff further relies on *King*, 788 F.3d at 216–17 (6th Cir. 2015), which not only

3    allowed a punitive damages claim to go forward in a First Amendment/PLRA case, but suggests

4    that punitive damages are almost *per se* appropriate in such a circumstance:[5]

5        When a defendant retaliates against a plaintiff's exercise of his First Amendment
         rights, the defendant necessarily acts with the purpose of infringing upon the
6        plaintiff's federally protected rights. . . . Thus, a defendant who has been found
         liable for First Amendment retaliation has engaged in conduct that warrants
7        consideration of an award of punitive damages.

8    The Ninth Circuit has not passed on application of § 3626(a) to punitive damages, but Plaintiff

9    draws an inference from *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002), which held that

10   punitive damages are not barred by § 1997e(e).  Plaintiff reasons that the Ninth Circuit would not

11   allow a punitive damages claim to go forward in a PLRA case if such damages were barred by

12   § 3626(a).  (*See* Dkt. No. 190 at 17.)

13       Further, Plaintiff cites cases in this district where punitive damages were allowed despite

14   application of the PLRA.  *See, e.g.*, *Maddaus v. Edwards*, No. 3:18-cv-5387-BHS, Dkt. 241 at 2

15   (verdict form) (W.D. Wash. Mar. 28, 2024) (awarding $2,000 in punitive damages to a prisoner-

16   plaintiff who suffered Eighth Amendment violations); *Choquette v. DuVall*, No. 3:15-cv-5838-

17   BHS, Dkt. 178 (verdict form) (W.D. Wash. Nov. 2, 2018) (awarding $400,000 in punitive

18   damages to a prisoner-plaintiff who suffered Eighth Amendment violations).

19

20   ─────────────────

21   [4] More recently, the *en banc* Eleventh Circuit held that § 1997e(e) does not bar mental and
     emotional damages absent physical injury in First Amendment cases, reversing prior panel
     decisions to the contrary (and supporting Plaintiff's position on that issue), but it declined to
22   revisit whether § 3626(a) acts as a punitive damages bar, because the issue was not properly
     presented.  *However v. Marks*, 993 F.3d 1353, 1364-65 & n. 5 (11th Cir. 2021).

23   [5] *King*, like *Canell*, only ruled on application of § 1997e(e) in First Amendment cases, and it did
     not consider applicability of § 3626(a).  *King*, 788 F.3d at 211–12.

24

1    Finally, Plaintiff points to the structure of the statute: after § 3626(a) comes § 3626(b),

2    which deals with termination or modification of prospective relief.  That belies the idea that

3    punitive damages cannot correct a legal violation.  (*See* Dkt. No. 190 at 18.)

4    Analysis:

5    To start, the Court again notes that this motion is not properly raised as a motion in

6    limine.  While the Court will analyze the merits of the argument for the sake of resolving this

7    matter for trial, the Court notes that the truncated nature of briefing for a motion in limine is not

8    suited for the Court to make a major ruling on a federal statutory question, and that weighs into

9    the Court's consideration of how to proceed here.  Defendant's argument is sweeping: its logical

10   implication is that *all* incarcerated people are categorically prevented from obtaining punitive

11   damages for *any* constitutional violations.  Such a sweeping ruling would require much greater

12   consideration than what is possible on this posture.

13   Defendant's argument that punitive damages are a type of "prospective relief" under the

14   PLRA is in tension with how that term is commonly understood, but does have support in the

15   statute's text.  Typically, the Court understands "prospective relief" to mean some form of

16   injunctive relief, and § 3626(a)'s narrow tailoring requirements, taken together with § 3626(b)'s

17   provisions for termination or modification of prospective relief, conform to that understanding.

18   *See e.g.*, *Balla v. Idaho*, 29 F.4th 1019 (9th Cir. 2022) (analyzing termination of an injunction

19   related to medical care and overcrowding in prison under § 3626(b)).  However, the definition of

20   "prospective relief" to include "all relief other than compensatory money damages," 18 U.S.C.

21   § 3626(g)(7), does appear to draw punitive damages within its ambit, and *Johnson*, 280 F.3d at

22   1325, accepts that position.  The Court also questions whether a First Amendment violation is a

23   "prison condition[]" under § 3626(a) or a "condition[] of confinement" under § 3626(g)(2), but

24

1   the limited available authority weighs in the affirmative.  When evaluating what counts as

2   "prison conditions" under the exhaustion requirement of § 1997e(a), the Supreme Court took a

3   broad view, holding that the term includes "all inmate suits about prison life, whether they

4   involve general circumstances or particular episodes, and whether they allege excessive force or

5   some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  As other courts have adopted

6   § 3626(g)(2)'s definition of "prison conditions" to define the same term in § 1997e(a), the

7   inverse likely applies.  *See Estrada v. Smart*, 107 F.4th 1254, 1264 (10th Cir. 2024).

8         Nonetheless, Defendant asks this Court to make a major inferential leap that is

9   contradicted by the primary case she cites.  Defendant argues that because punitive damages are

10  "prospective relief" under § 3626(a) they are also *per se* unavailable, because they cannot satisfy

11  § 3626(a)'s conditions.  First, that argument runs counter to traditional principles of statutory

12  interpretation, such as avoiding surplusage and absurdity.  If Congress wanted to ban punitive

13  damages in PLRA cases outright it could have said so, but it did not.  Rather, Congress imposed

14  certain conditions on all prospective relief, and if prospective relief includes punitive damages,

15  the Court must endeavor to apply those conditions to an award of punitive damages.  That is the

16  same conclusion the Eleventh Circuit reached in *Johnson*, on which Defendant relies, which held

17  that punitive damages are allowed to the extent they are "no larger than reasonably necessary to

18  deter the kind of violations of the federal right that occurred" and are "imposed against no more

19  defendants than necessary to serve that deterrent function and that they are the least intrusive

20  way of doing so."  280 F.3d at 1325.  The Court will not be able to undertake such an analysis

21  unless and until the jury returns a punitive damages award.  *See id.* (noting that the district court

22  should have scrutinized a punitive damages award under those terms).

23

24

Further, prudential considerations counsel strongly against blocking arguments to the jury on punitive damages at this late stage.  For instance, if the Court were to grant Defendant's motion in limine and prevent arguments on punitive damages, and the Ninth Circuit were to ultimately reverse that decision, the Circuit would need to remand the case for a new trial on damages, which would be a tremendous waste of the Court's and parties' resources.  By contrast, if the Court denies the motion in limine and the jury awards punitive damages, Defendant would not be prevented from raising the issue again in a motion for remittitur or judgment notwithstanding the verdict (JNOV).  Additionally, the issue would be preserved for the Ninth Circuit to consider after the verdict, and if the Circuit Court were to accept Defendant's argument it could simply reverse any punitive damages award with no need to remand for a new trial.

For those reasons, the motion is **DENIED**.[6]

Dated this 25th day of November, 2024.

David G. Estudillo
United States District Judge

---

[6] During the November 22, 2024 pretrial conference, counsel for Defendant orally raised an additional motion in limine regarding Defendant's vaccination status and separation from her position at the Washington Department of Corrections.  As discussed during the conference, the Court will RESERVE on that motion pending further briefing from the parties.

ORDER ON MOTIONS IN LIMINE (DKT. NOS. 170, 172) - 17